IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE ASSIGNED CALL NUMBER: 203-918-8924 | Case No. 3:18mj1465(SALM) <br><br> **Filed Under Seal** |



FILED
2018 SEP 19 P 2: 11
U.S. DISTRICT COURT
NEW HAVEN, CT.

### AFFIDAVIT IN SUPPORT OF
### APPLICATIONS FOR A SEARCH WARRANT

I, Ryan Mensing, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of applications for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned (a) call number (203) 918-8924 ("Target Cell Phone"), whose service provider is AT&T Corporation, a wireless telephone service provider headquartered in North Palm Beach, Florida. The Target Cell Phone is described herein and in Attachment A to the respective warrant, and the location information to be seized is described herein and in Attachment B to the respective warrant. Your affiant believes the TARGET CELL PHONE is being used by Vincent Decaro, who has been indicted on drug trafficking charges in Connecticut and whom I believe is in Albania to avoid prosecution.

2. I am a Special Agent of the Drug Enforcement Administration ("DEA") and have been so employed since 2003. I am currently assigned to the Bridgeport High Intensity Drug Trafficking Area Task Force ("HIDTA Task Force"), which is comprised of personnel from the DEA, Norwalk Police Department, Stamford Police Department, Stratford Police Department, Milford Police Department, Bridgeport Police Department, Trumbull Police Department and the Connecticut State Police.

3. During the course of my career, I have participated in numerous criminal investigations including investigations into suspected narcotics trafficking and money laundering. My participation in the investigations has included coordinating controlled purchases of narcotics utilizing confidential informants, cooperating witnesses and undercover law enforcement officers; coordinating the execution of search and arrest warrants; conducting electronic and physical surveillance; analyzing records related to narcotics trafficking; testifying in Grand Jury and District Court proceedings; and interviewing individuals and other members of law enforcement regarding the manner in which narcotics traffickers obtain, finance, store, manufacture, transport and distribute controlled substances. I have participated in multiple investigations involving the execution of search warrants on electronic devices.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts provided in this affidavit, there is probable cause to believe, and I do believe, that the location information described below and in Attachment B, which is incorporated herein, will assist law enforcement in locating and arresting Vincent Decaro and he is a "persons to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4). I also believe there is probable cause to believe, and I do believe, that Vincent Decaro is likely aware of the charges against him and has moved to avoid prosecution for the felony drug trafficking crimes charged in the Indictment.

**PROBABLE CAUSE**

6.     The United States is investigating a fentanyl trafficking organization that purchases fentanyl, presses the drug into counterfeit Oxycodone pills, and distributes the pills via the United States mail. The investigation concerns possible violations of, *inter alia*, 21 U.S.C. §§ 841(a)(1) and 846.

*A.     The April 3, 2018 Search and Arrest*

7.     On April 2, 2018, a Stamford Police Department Confidential Informant (hereinafter "the CI") provided information to the Stamford Police Narcotics and Organized Crime Unit that, within the 24-hour period before speaking to police, s/he saw what appeared to be approximately three to four ounces of Carfentanil packaged in a Ziploc-style bag inside a garage area of 77 West Hill Circle, Stamford, Connecticut. The CI also stated that s/he saw packaging material, scales, and a pill press inside the same residence.

8.     The CI further stated that the individual who showed him/her the Carfentanil inside the garage area of the residence is known to him/her as David Reichard. The CI further stated that Reichard was then residing at 77 West Hill Circle with a friend that is known to him/her as "Vinny". "Vinny" has subsequently been identified as Vincent Decaro.

9.     Based on this information, a Connecticut State search and seizure warrant was presented and approved before Connecticut Superior Court Judge Comerford on April 3, 2018.

10.    On April 3, 2018, members of the Stamford Police stopped Reichard in a vehicle as he was returning to the residence at 77 West Hill Circle. Reichard was found to be in the possession of five folds of a brown powdery substance that later field-testing confirmed was heroin.

11.     On scene at the time of his arrest, Reichard was verbally advised of his *Miranda* by Stamford Police Officer Luis Vidal as witnessed by Stamford Police Officer Feldman-Merced. Subsequently, Reichard told law enforcement officers that the Carfentanil would be contained within Ziploc-type bags in a Pelican case in the rear upper garage area of 77 West Hill Circle. Reichard also stated that there are three pill presses inside a silo-shaped room in the same residence.

12.     Members of the Stamford Police executed the search warrant of the residence. No other subjects were located inside the residence. Upon their initial sweep of the house to locate any other people therein, members of the Stamford Police observed what they believed to be a clandestine manufacturing area in the rear upper garage area of the residence. Upon determining that this was a clandestine lab and due to the toxicity of Carfentanil exposure, the Stamford Police Officers backed out of the residence, secured the perimeter, and contacted members of the DEA New England Field Division Clandestine Laboratory Enforcement Team (CLET). Members of the CLET team then responded to the location in the evening hours of April 3, 2018 to conduct a search and evidence collection at the residence with the proper hazardous materials protection.

13.     During the search of the rear upper garage area and the silo room of the house, the CLET members located and seized the following items that were deemed to be related to Carfentanil processing and distribution:[1]

- Four Mason type jars containing an unknown white powder;
- One bag of white powder;
- One mail package containing numerous pills;

---

[1] It should be noted that the following list is not a total list of all evidence seized but a portion of what was documented and seized.

- One brown Pelican type case containing powder in plastic bags from a tote on the floor;
- Two Mason type jars with unknown liquid located in the tote on floor;
- Two pieces of paper that appeared to containing instructions on the preparation of the Carfentanil;
- One hazardous material suit and one gas/respirator type mask;
- One scale with residue located on small table;
- Three pill presses (each containing powdery residue), inside of which were stamps used to mark pills "A 215";
- Numerous bags of powder, mixers, strainers, and funnel; and
- Numerous United States Postal empty mail envelopes.

14. Located in a safe inside the residence, CLET team members located another mail package containing numerous blue colored pills, a 7.62 caliber rifle, and various paperwork in the name of Vincent Decaro.

15. Inside another bedroom utilized by Reichard, CLET team members seized a laptop computer, a cellular telephone on the desk, as well as another mail envelope with numerous blue pills located in the desk drawer. These pills were also stamped A215.

16. Based on the agents' training and experience as relayed to me, I know that narcotics traffickers market and press fentanyl and its variants, such as Carfentanil, into pills to be sold as counterfeit Oxycodone. Due to the possible exposure to Carfentanil, it was impossible to determine exactly how many counterfeit Oxycodone pills were seized during the search. DEA Special Agent Ryan Mensing has examined all drug evidence in this investigation and in his estimation, there were over fifteen hundred counterfeit pills seized at the residence. The pills are a light blue in color stamped with the imprint "A 215" on one side of the pills. An internet search of that imprint indicated that the "A 215" imprint is for a 30-milligram Oxycodone Hydrochloride tablet.

**B.      *Reichard's Post-Arrest Statement to Law Enforcement***

17. The next day, members of the DEA Bridgeport Resident Office, the United States Postal Inspection Service, and the Stamford Police Department conducted a videotaped interview of Reichard. Reichard stated he began living with Decaro at the 77 West Hill Circle residence in February 2018. Reichard stated that, after approximately one week at the house, Decaro came to him late at night and asked for his assistance, and proceeded to hand Reichard a pair of latex gloves and a disposable type dust mask. Decaro asked Reichard to turn on the stove to 170 degrees, which he did. Decaro then went outside to the garage area of the house and came back with two mason jars and two sheet pans. Inside the two mason jars was a liquid. Decaro further explained the process to Reichard in which they took the liquid mason jars, added powder and then hand mixed the contents. They then poured the contents into the baking sheet pans and placed them in the oven. Reichard stated that Decaro told him that, while he would explain more in the morning, this is how he (Decaro) made his money. The next day Reichard stated that Decaro showed him the silo room, which contained the pill presses. Decaro utilized the substances he baked in the oven from the previous night to make blue colored pills stamped "A 215". Reichard described these pills as 30mg Percocet pills. Reichard stated that Decaro utilized the "dark web" to purchase the Carfentanil and used a dark web website to sell the pills to buyers all over the United States.

18. Based on my training and experience and on information provided by reliable law enforcement sources, I know that individuals involved in the trafficking of illicit drugs are increasingly using Dark Network Markets ("DNMs") to distribute and purchase narcotics and materials used to manufacture narcotics. The "Dark Network" or "Dark Web" refers to any portion of the Internet that can be accessed only with specific software, configurations or authorization. The most commonly known Dark Network is The Onion Router, otherwise

known as TOR. People who access the Dark Network use a series of sites that anonymize their internet traffic, thereby making it difficult for law enforcement to track them via an Internet Protocol address. To further criminal activities, those distributing illicit goods, including narcotics, have established websites on the Dark Network, known as DNMs, on which they advertise and sell the illicit materials.

19. Reichard further explained that Decaro would utilize the United States Postal Service to ship the pills to customers who purchased his product over the dark web. Reichard stated that, on one occasion, he accompanied Decaro to the post office in Stamford, Connecticut to ship numerous packages of pills. Reichard stated that he (Reichard) personally carried several packages he knew contained these counterfeit Oxycodone pills into the post office.

20. Reichard stated that Decaro went to Europe approximately three to four weeks ago for a vacation and to visit a friend who had previously lived in Stamford. Reichard stated that, while Decaro was away, he called Reichard and told him to download the WhatsApp phone application so they could communicate. Once that was done, Reichard stated Decaro asked him to make a batch of pills and that he would have to start from the beginning by mixing the Carfentanil in the garage area to be baked as described earlier. Reichard stated that he was planning on communicating with Decaro via FaceTime so that Decaro could further show him how to mix the Carfentanil.

C. *Prior Packages to Decaro's Residence*

21. On or about August 11, 2017, agents from United States Customs and Border Protection Service conducted a border search of a parcel at the FedEx hub in Memphis, Tennessee. The parcel originated from China, was labeled as "Surfactant", and was addressed to "Vincent DeCoro, 77 West Hill Circle, Stamford CT 06902". Upon inspection, agents

determined that the parcel contained an unknown white powdery substance in a clear zip lock bag, which was later tested and determined to contain 11.8 grams of Benzyl Fentanyl.

### D.   *Arrest of Decaro in Las Vegas*

22.    On or about June 17, 2017, Decaro was arrested with Co-Conspirator Arber Isaku by Las Vegas police officers for possession with intent to distribute MDMA.

23.    On that date, having seen Decaro and Isaku behave suspiciously at a music festival, officers approached both men and identified themselves verbally as police officers. One officer asked Decaro if he had any Ecstasy on him and Decaro stated that he did. At the officer's request, Decaro removed a Ziploc baggy from his right front pocket containing 10 pink tabs with a total of 3.9 gross grams consistent with MDMA. The officers also spoke with Isaku who told them that he had four tabs of Ecstasy in his pocket. Isaku removed a cigarette wrapper from his left front pocket containing four blue tabs with a total gross weight of 0.7 gross grams and the tabs were consistent with ecstasy tabs. The officers then arrested both men on for possession of controlled substances with intent to sell.

### E.   *Prior Package Seizure and Arrest of Arber Isaku*

24.    On or about August 23, 2017, members of the Connecticut State Police made a controlled delivery of a facsimile package to an individual known as Arber Isaku at 52 Mitchell Street in Stamford, Connecticut with a phone number of 203-249-8635 ("Target Cell Phone Three"). Earlier, members of the United States Custom and Border Protection ("CBP") had seized a package addressed to Isaku that contained approximately 160 grams of fentanyl HCL.[2]

---

[2] Due to the fact that Fentanyl Analogs may be hundreds of times more potent than heroin and tend to produce a significantly higher respiratory depression and in some cases fatalities have occurred, the original parcel and contents were packaged and sent to the CPB Lab.

25.     After knocking on the door, Isaku came outside where the officer, dressed as mail delivery man, explained that he had a package for an Arber Isaku and that the package was put on the wrong truck, so he was out to personally deliver it. Isaku first stated, that he did not order anything. He appeared very nervous and continued to look at the officer's shirt and back to his van. When the officer said that he would take the package back, Isaku stopped the officer and said that he would take the package. Isaku then questioned the officer's shirt, saying that the package was sent via USPS and the officer was wearing a UPS shirt. The officer advised him that he was an independent contractor and delivered for all of the mailing companies. He advised Isaku that he had to sign for the package, and Isaku did so, printing his name and the phone number assigned to Target Cell Phone Three.

26.     Once Isaku took possession of the package and signed for it, a signal was made and officers exited the van and took custody of Isaku. On his person, officers located a plastic bottle containing what appeared to be 38 Oxycodone pills. Pursuant to a state search warrant, officers seized from Isaku's residence, *inter alia*, (a) one 30-06 caliber rifle; (b) ammunition; (c) 159 apparent Oxycodone pills; and (d) four vials of steroids.

27.     On April 11, 2017, DEA Task Force Agent Sean Krauss examined several of the apparent Oxycodone Pills which are currently held in storage at the Connecticut State Police Evidence Vault in Meriden, CT. Every Pill that TFO Krauss examined were stamped A215 and were a light blue color. The same stamped pills were located at the 77 West Hill Circle counterfeit pill processing clandestine lab on April 3, 2018. TFO Krauss also observed that the pills at the state police vault were crumbling and breaking apart. Based on TFO Krauss' training and experience, he believed that the pills were possibly counterfeit pills. With this information,

the pills were subsequently requested to be removed from storage and sent to the Connecticut State Police Laboratory for analysis.

### F.    Phone Contact Between Reichard and Decaro

28.    During the interview of Reichard subsequent to his arrest, Reichard advised that Decaro's cellular number is 203-918-8924 ("Target Cell Phone"). Additionally, according to records from AT&T, Target Cell Phone One is subscribed to Mary Decaro, who is believed to be Decaro's grandmother.

29.    Toll analysis of Target Cell Phone One for March 5, 2018 thru April 4, 2018 indicated that the number was in contact with 203-343-9803 (Reichard's Phone Number) 325 times between March 25, 2018 and April 2, 2018.

### G.    Indictment of Decaro, Reichard and Isaku

30.    On August 7, 2018, A Federal Grand Jury in New Haven, Connecticut indicted Vincent Decaro, David Reichard, and Arber Isaku with Conspiracy to Distribute and to Possess with Intent to Distribute Fentanyl Analogue in violation of 21 U.S.C. 846. Decaro and Reichard were also charged with Possession with Intent to Distribute 100 grams or more of Fentanyl Analogue in violation of 21 U.S.C. 841 (a) and 841 (b)(1)(A). Finally, Isaku was also charged with possession with intent to distribute fentanyl analogue in violation of 21 U.S.C. 841 (a) and 841 (b)(1)(C).

31.    Toll analysis of the Target Cell Phone is still being conducted and shows that the Target Cell Phone is still currently being utilized as of September 18, ~~2019~~ 2018 [RA] and is still subscribed in the name of Mary Decaro. It is believed that Decaro is currently in the country of Albania per information obtained from Albanian Law Enforcement as well as toll records showing that Decaro is utilizing the Target Cell Phone to call numerous Albanian phone numbers. It is

believed that Decaro is in Albania with Co-Conspirator Arber Isaku to avoid arrest by law enforcement.

32. In my training and experience, I have learned that AT&T Corporation is a company that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

33. Based on my training and experience, I know that AT&T Corporation can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phones on their networks or with such other reference points as may be reasonably available.

34. Based on my training and experience, I know that AT&T Corporation can collect cell-site data about the Target Cell Phone.

11

## AUTHORIZATION REQUEST

35. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

36. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 30 days after the collection authorized by the warrants has been completed. There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give those people an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from or continue flight from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B to the respective warrant, which are incorporated into the warrants, the proposed search warrants do not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrants authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

37. I further request that the Court direct AT&T Corporation to disclose to the government any information described in Attachment B to the warrants that is within the possession, custody, or control of AT&T Corporation. I also request that the Court direct AT&T Corporation to furnish the government including the Drug Enforcement Administration and the United States Marshal Service all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B to the warrants

unobtrusively and with a minimum of interference with AT&T Corporation services, including by initiating a signal to determine the location of the Target Cell Phones on AT&T Corporation network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T Corporation for reasonable expenses incurred in furnishing such facilities or assistance.

38. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

39. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

RYAN MENSING
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on 19 Sept, 2018

/s/ Sarah A. L. Merriam, USMJ

THE HONORABLE SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (203) 918-8924 (the "Target Cell Phone"), whose wireless service provider is AT&T Corporation, a company headquartered in North Palm Beach, Florida.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of AT&T Corporation, including information about the location of the cellular telephone if it is subsequently assigned a different call number.



## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T Corporation, AT&T Corporation is required to disclose the Location Information to the Drug Enforcement Administration and the U.S. Marshal Service. In addition, AT&T Corporation must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T Corporation's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Corporation's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government or the Drug Enforcement Administration and U.S. Marshal Service. The government shall compensate AT&T Corporation for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).